IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VICKI L. TRIMBLE, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00206 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Vicki L. Trimble brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on May 23, 2010 – due to post-concussion syndrome stemming from a car accident in 1999; neck and shoulder injuries; right wrist surgery; and alcoholism.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. Background

### A. Plaintiff's Testimony

Plaintiff was 51 years old on her alleged disability onset date, placing her in the category of a "person closely approaching advanced age" for purposes of resolving her claim for SSI. *See* 20 C.F.R. § 416.963(d). She has a high school education. Her past relevant employment includes work as a cashier and heat-sealing machine operator.

At her administrative hearing in December 2012, Plaintiff testified she is 5' 6" tall and weighs approximately 230 pounds. (*PageID#* 126). She lives with her husband and adult son in a house. She drives a car approximately 3 to 4 times per week. She worked as a cashier from October 2007 until March 2008. Plaintiff was let go from this position because of discrepancies in her cash register. She stated, "I had, had shortages [in my] cash register, changing bills that were larger than we were supposed to accept although other people did it I got confused by it." (*PageID#* 127). Plaintiff also worked a telemarketing job for approximately 2 months but "was fired for forgetting part of the script." (*PageID#* 128).

Plaintiff testified she experiences constant pain in her back that radiates into her right hip and legs. Medications only help take the edge off of the pain. Plaintiff also experiences constant pain in her neck, between the fourth and fifth vertebra. The pain is worse in the evenings, "as the day goes on it gets more intense." (*PageID#* 129). Her neck pain radiates into her shoulders and arms. She does some physical therapy at home, approximately 3 times each day for about 15 to 20 minutes a time. Plaintiff also has high

blood pressure which causes her to feel faint.

As to her mental impairments, Plaintiff testified she is depressed and has suicidal ideation.  She has been seeing a psychiatrist since approximately 1993 and presently takes BuSpar and Prozac for anxiety and depression.  If she stops taking her medication she has "a hard time going out."  (*PageID#* 133).  Plaintiff stated, "I get, I get stuck in my house for days and I become, become overwhelmed easily."  (*PageID##* 133-34).  When asked about other symptoms of depression or anxiety she experiences, Plaintiff stated, "Like I'm – I sleep a lot.  I get addicted to sleep.  Not taking a shower for a couple of days.  Not getting dressed.  And like now I just need to go home and that's what I do and that's a lot of what caused my problem because when I was in my car accident I didn't go to the hospital, I just went home."  (*PageID#* 134).

On a typical day, Plaintiff uses her computer and plays games to pass the time.  She goes to AA meetings, reads a little, and does prayer and meditations in the morning.  She watches television for a few hours in the evening and sleeps about 8 to 10 hours each night.  Depending on how she is feeling, Plaintiff is able to do the dishes, sweep, vacuum, and go grocery shopping.  She last drank alcohol on September 17, 2007, and has not done any illegal drugs since this time either.

Plaintiff estimates she can stand for approximately 10 minutes and sit for approximately 30 minutes at a time.  She estimates she can comfortably lift only 5 pounds.

When cross-examined by her counsel, Plaintiff stated she mainly cooks using the crockpot.  She also testified her son helps with lifting and carrying items around the house.

3

He also helps with laundry and takes out the trash. Plaintiff estimated she plays games on the computer approximately 6 to 8 hours per day, although some days its only a few hours. When not playing games she usually reads or goes to her AA meetings. She has crying spells every two or three days.

B.  **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

**III.** **"Disability" Defined and the ALJ's Decision**

The Social Security Administration provides Supplemental Security Income (SSI) to indigent individuals, subject to several eligibility requirements. Chief among these, for purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant

paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2] 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ James I.K. Knapp applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 416.920(a)(4)(I)-(v). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "mild cervical and lumbar degenerative disc disease, moderate exogenous obesity, dysthymia, and a generalized anxiety disorder." (*PageID#* 101).[3]

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 12.04 and 12.06. (*PageID##* 103-06).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[4] to:

> (1) lift and/or carry more than 25 pounds frequently and 50 pounds occasionally; (2) climb ladders, ropes, or scaffolds; (3) work at unprotected heights or around moving machinery; (4) have contact with the public; (5)

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

[3] Although the heading for Step 2 only lists mild lumbar degenerative disc disease, the ALJ's discussion indicates he also found Plaintiff had mild cervical degenerative disc disease.

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

>have greater than occasional contact with supervisors or co-workers; or (6) do other than low stress work activity (i.e., no job involving fixed production quotas, rapid production pressures, or otherwise involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(*PageID##* 107-10). The ALJ also concluded at Step 4 that Plaintiff's "subjective symptoms lack credibility to the extent that they purport to describe a condition of disability for Social Security purposes." (*PageID#* 110).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.**     **Discussion**

Plaintiff first contends the ALJ committed "plain error" by asserting that she only suffered from a mild degree of degenerative disc disease of the lumbar spine. (Doc. #8, *PageID#* 1033). According to Plaintiff, substantial evidence does not support the ALJ's conclusions at Steps 2 and 3. The Commissioner argues the ALJ properly considered the evidence, including objective imaging relating to Plaintiff's neck and back. (Doc. #9, *PageID#* 1050). The Commissioner contends Plaintiff is merely attempting "to re-examine the record evidence," and substantial evidence supports the ALJ's findings. (*Id.*, *PageID#* 1051).

The ALJ found Plaintiff suffered from, in part, the severe impairment of mild

cervical and lumbar degenerative disc disease.  (Doc. #6-2, *PageID#* 101).  In support of this finding, the ALJ noted the following:

> The record documents a history of mild degenerative disc disease of the lumbar spine without significant clinical findings on examination (Exhibits 3-F, 5-F, 6-F, 11-F, 13-F, 14-F, 20-F, 23-F and 28-F).  Evidence relevant to the SSI filing date of July 20, 2010, indicates ongoing complaints of low back and neck pain, but no clinical findings consistent with radiculopathy or nerve root compression.  X-rays of the sacroiliac joint taken on January 24, 2012, revealed only moderate degenerative disc space narrowing at the L5-S1 level (Exhibits 37-F and 42-F).  The claimant complains of ongoing low back pain, but physical therapy and treatment records are remarkable only for the claimant's subjective complaints during both evaluation and treatment sessions, and she is simply noted to have chronic back pain without evidence of neurological compromise (Exhibits 35-F, 36-F, 38-F, and 43-F).  In fact, Dr. Dennison reported that the claimant's cervical and lumbar impairments remained stable (Exhibit 40-F).  Based on the mild objective findings, and the claimant's complaints of low back pain, it is appropriate to find that this impairment imposes more than a minimal restriction on her ability to perform the basic exertional requirements of work activity, particularly heavy lifting and carrying.  As a result, this condition satisfies the *de minimis* standard for demonstrating a severe impairment within the meaning of the Social Security Act.

(Doc. #6-2, *PageID#* 102).  Plaintiff first challenges the ALJ's finding that the degenerative disc disease of her lumbar spine is "mild" and the record lacks "significant clinical findings on examination."  (Doc. #8, *PageID#* 1033).  In particular, Plaintiff contends the exhibits cited to and relied upon by the ALJ in arriving at his conclusion actually support finding the degenerative disc disease in her lumbar spine is moderate to severe.

The ALJ found, "[t]he record documents a history of mild degenerative disc disease of the lumbar spine without significant clinical findings on examination."  He cited to 9 exhibits purportedly supporting this position: exhibits 3-F, 5-F, 6-F, 11-F, 13-F, 14-F, 20-

8

F, 23-F.  While the exhibits cited to by the ALJ support a finding that Plaintiff's cervical degenerative disc disease is mild, (*see e.g. PageID##* 413, 643), they do not likewise support his finding that Plaintiff's lumbar degenerative disc disease is also mild.  For example, a multi-view x-ray study of Plaintiff's lumbar spine performed in August 2007 identified "[d]egenerative disc disease of severe degree at L5-S1" (*PageID#* 418) and an MRI taken in October 2007 indicated "severe degenerative disc disease and low back pain." (*PageID#* 414).  A subsequent MRI of Plaintiff's lumbar spine taken in July 2009 indicated "degenerative disc disease is again seen at L4-L5 and L5-S1 with disc dessication.  There is moderate to severe disc space narrowing at L5-S1 and endplate reactive changes that are stable from the prior exam [MRI of lumbar spine performed in October 2007]." (*PageID#* 509).  The ALJ's finding that Plaintiff's lumbar degenerative disc disease was mild is therefore not supported by substantial evidence in the record.  Although the Commissioner appears to believe Plaintiff is requesting the Court "reweigh evidence more heavily in her favor," (Doc. #9, *PageID#* 1050), in actuality Plaintiff is merely asking the Court to review the ALJ's factual findings as to her lumbar degenerative disc disease to confirm whether they are supported by substantial evidence.  Having performed such a review, the Court finds they are not.  Again, the evidence does not provide substantial support for finding Plaintiff's lumbar disc disease was mild in nature.

     As Plaintiff notes, the issue is particularly problematic in this case as the ALJ later relied on such unsupported findings to determine Dr. Dennison's opinion was "not entitled to more than minimal adjudicative weight." (*PageID#* 108).  Dr. Dennison completed two

forms for the Ohio Department of Job and Family Services: a Physician Certification of Medication Dependency and a Basic Medical assessment (*PageID#* 906-08).  On the Medication Dependency form, Dr. Dennison listed four chronic medical conditions: gastroesophageal reflux disorder (GERD), hypertension, hyperlipedemia, and chronic low back and neck pain.  (*PageID#* 906).  Medications listed were omeprazole, toprol, prevastatin, norvasc, and naproxen.  (*Id.*)  Dr. Dennison indicated the onset date of Plaintiff's chronic low back and neck pain as 1999.  (*Id.*).  On the Basic Medical form, Dr. Dennison indicated Plaintiff can only stand/walk for 1 hour in an 8-hour workday, and for only 15 minutes without interruption.  (*PageID#* 908).  He opined she can only sit for 4 hours in an 8-hour workday and for only 1 ½ hours.  Dr. Dennison believed Plaintiff could lift/carry 5 pounds frequently.  He indicated her ability to push/pull was markedly limited; her ability to bend was extremely limited; her ability to reach was moderately limited; and she had no restrictions in her ability to make repetitive foot movements, see, hear, and speak.  Dr. Dennison believed Plaintiff's conditions would last 12 months or more.  He found she was employable, but noted "office work only" and "no lifting or bending." (*Id.*).

  Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists.  *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

   As a general matter, an opinion from a medical source who has

>examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[5] To effect this hierarchy, the Regulations adopt the treating physician rule. *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242; *cf. Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("in fact the technical name for the 'treating physician' rule is the 'treating source' rule"). The rule is straightforward:

>Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If both conditions do not exist, the ALJ's review must continue:

>When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

---

[5] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards. *See Gentry*, 741 F.3d at 723. The re-lettered version applies to decisions, like the ALJ's decision, issued on or after April 1, 2012.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

As to non-treating medical sources, the regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §404.1527(c)).

Although the ALJ did not need to provide "good reasons" for rejecting the opinion of Dr. Dennison as the record establishes he is only a nontreating (but examining) source, findings made by the ALJ when weighing Dr. Dennison's opinion nevertheless still must be supported by substantial evidence.

The ALJ, in part, found that Dr. Dennison's "assessment[s] are significantly disproportionate to the objective and clinical findings reported in the evidentiary record." (*PageID#* 108). This finding, however, appears premised on the ALJ's same incorrect conclusion that Plaintiff's lumbar degenerative disc disease was mild. Because, as previously discussed, the ALJ's finding that Plaintiff's lumbar degenerative disc disease was mild is not supported by substantial evidence in the record, it too follows the ALJ also erred by relying on such an erroneous conclusion when determining whether to provide any weight to Dr. Dennison's opinion. For these reasons, Plaintiff's Statement of Errors is well taken.[6]

---

[6] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions regarding counselor Alexander's opinion is presently unwarranted.

## VI. Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand warranted by an ALJ's failure to follow the regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Vicki L. Trimble was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


July 1, 2015

                   s/Sharon L. Ovington
                    Sharon L. Ovington
              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).